**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

KATRINA B. COMER,                    )
                                     )
    Plaintiff,               )
                                     )
    v.                       )          No. 2:14-CV-467
                                     )
SCHOOL CITY OF HAMMOND INC.,         )
                                     )
    Defendant.               )

## OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment filed by School City of Hammond, Inc., on November 2, 2016. For the reasons set forth below, this motion is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.**

## BACKGROUND

Katrina B. Comer ("Comer") was employed by the School City of Hammond, Inc. ("Hammond School") as a painter from May 2010 until July 1, 2014. During her time with Hammond School, Comer filed several charges with the Equal Employment Opportunity Commission ("EEOC"). Relevant here are two charges filed in 2014.

On March 29, 2014, Comer filed Charge No. 470-2014-01277 against the Hammond School. In this charge, Comer alleged that she was retaliated against for filing two previous charges with the EEOC and discriminated against due to her race and sex. A

few months later, on July 10, 2014, Comer filed Charge No. 470-2014-02282 against the Hammond School. Under this charge, Comer alleged Hammond School terminated her position in retaliation for filing the three previous charges. The EEOC issued its Dismissal and Notice of Rights for Charge Nos. 470-2014-02282 and 470-2014-01277 on September 30, 2014.

On December 29, 2014, Comer filed a *pro se* employment discrimination complaint against Hammond School and Diane Schweitzer. Comer retained counsel and the complaint was amended and to allege multiple claims, as follows: 1) unlawful discrimination and job elimination based on race and sex in violation of Title VII; 2) retaliation in violation of Title VII; 3) a claim pursuant to 42 U.S.C. section 1983 for a violation of the Fourteenth Amendment; and 4) a violation of 42 U.S.C. section 1981. The Defendants filed a motion to dismiss the amended complaint. This Court dismissed all claims except the Title VII claims against Hammond School arising under EEOC Charge Nos. 470-2014-01277 and 470-2014-02282.

Following the close of discovery, the instant motion for summary judgment was filed. The motion is now fully briefed and ripe for adjudication.

DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

A party opposing a properly supported summary judgment motion may not rely on allegations in her own pleading but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the nonmoving party fails to establish the existence of an essential

element on which she bears the burden of proof at trial, summary judgment is proper. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Facts

In support of the instant summary judgment motion, Hammond School has set forth a detailed summary of the evidence before this Court, supported by citations to the evidence. (DE #40-1). In response, Comer explicitly indicates that she admits the truth of the Hammond School's undisputed facts, although she denies that those facts entitle Hammond School to summary judgment. (DE #43-1 at 2). Comer also tendered nine numbered paragraphs designated as disputed material facts. These paragraphs consist of short conclusory statements or questions without citations to the record. They will therefore be disregarded by this Court.[1] Because the facts in this case are undisputed, the Court has relied heavily on the facts as presented in the Hammond School's statement of

---

[1] At the conclusion of the nine numbered paragraphs, Comer designates her affidavit. The affidavit contains primarily basic recitations of historical facts regarding her employment (such as her hire date, work assignments, job description, dates that EEOC charges were filed, and termination date). It is largely duplicative of the uncontested evidence set forth by Hammond School. To the extent the affidavit provides facts that are different from or in addition to those contained in Hammond School's undisputed facts, they will be disregarded. These facts were not identified in the section labeled "Statement of Genuine Disputes," as required by Northern District of Indiana Local Rule 56-1(b)(2).

undisputed material facts, supplementing and editing where necessary.

Hammond School is a political subdivision of the State of Indiana. The Superintendent is Dr. Walter J. Watkins. ("Dr. Watkins"). Hammond School is governed by a seven-person elected Board of School Trustees. Dr. Diane Schweitzer ("Dr. Schweitzer") is Hammond School's Director of Buildings and Grounds, and has served in this position since September 2011. Dr. Schweitzer's duties involve managing the Maintenance Department, which includes a number of departments, such as HVAC, plumbing and the painting department. These departments are also referred to as "crafts."

Comer is an African-American woman who began working at Hammond School as a painter in May 2010. Ed Cassady ("Cassady") was Comer's supervisor until his death in March 2014. Cassady was Caucasian. Until Cassady's death, Comer and Cassady were the only two employees in Hammond School's painting department. Comer and Cassady were good friends. Both Comer and Cassady were members of Local 460, the painter's union. Each of the departments within Hammond School's maintenance department, or "crafts", employ people that are members of each craft's respective union. All of the employees in the Maintenance Department are based in the Hammond School's warehouse.

Prior to Dr. Schweitzer assuming these responsibilities, Comer's supervisor was Joe Hickman ("Hickman"). In 2010, while

Hickman was Comer's supervisor, there was an incident involving another employee in the maintenance department, Kevin Kolcznski ("Kolcznski"), who is Caucasian. Cassady and Comer were sitting in a room watching something on a computer when Kolcznski walked past the room. Kolcznski asked them if they were watching "porn." Cassady said "no" and, together with Comer, complained to Hickman. Comer was not disciplined in any way as a result of the incident or her complaint to Hickman.

Kerry Kuc ("Kuc"), another maintenance department employee, is Caucasian and worked in Buildings and Grounds. Comer alleged that he gave the "Hitler salute" to herself and Cassady on several occasions. Cassady advised Comer that "he does it all the time" and the gesture was not limited to Comer. Comer reported this to Cassady, and Cassady told Hickman. Comer was not disciplined or reprimanded in any way because of this incident or the report to Hickman.

The next incident occurred at a Christmas party for employees of the maintenance department in December 2010. The Christmas party was not held on School property. The Plaintiff was sitting at a table at the party with several people, including Kolcznski, Kuc, and Keith Kleinfeldt ("Kleinfeldt"). Someone made a comment about having three "K's" sitting there. At that point, Kolcznski put his hood on over his head and started laughing, and then said "KKK." No one else at the party was inappropriate,

and all others were nice to Comer.  Comer made a report regarding this incident to Cassady and she believes he then told Hickman. Comer was not disciplined for making this report.

Comer also took issue regarding a comment made by Kolcznski to Cassady to the effect that Comer did not do any work while Cassady was on vacation.  Comer believes this occurred in 2011. Cassady spoke to Hickman regarding this statement.  Comer was not disciplined, reprimanded or demoted in any way due to Kolcznski's alleged remark.

Comer also was disturbed regarding a remark that she believes was placed in Cassady's 2011 evaluation that suggested that Cassady should provide Comer with additional training so that she could expand her knowledge within the Maintenance Department.  The remarks were directed to Cassady, not Comer. They did not state that Comer was failing to perform any of her tasks.  Comer was not reprimanded or disciplined in any way because of the statements in Cassady's evaluation.

Comer met with Hickman on January 27, 2011, to discuss some of her concerns.  At this meeting, Comer complained about the remark made by Kolcznski that she did no work when Cassady was on vacation.  Comer does not remember mentioning anything to Hickman about the KKK comment at the Christmas party or Kolcznski's asking if she and Cassady were watching pornography.

After the meeting with Hickman, Comer was still not satisfied and had a meeting with the Superintendent of the School City of Hammond, Dr. Watkins. Dr. Watkins is African-American. At the time of her deposition, Comer could not remember why she was dissatisfied after her meeting with Hickman. In the meeting with Dr. Watkins, Comer raised the issue regarding the KKK remarks.

Hickman had a meeting with Kerry, Keith and Kevin regarding the incident at the Christmas party. They each signed a statement acknowledging that the School had a zero-tolerance for offensive jokes.

Comer was still not satisfied and brought some of these issues to the attention of her union representative, Henry Ciara ("Ciara"). Ciara is an employee of Local 460, and not the Hammond School. Comer discussed with Ciara the Christmas party, the comment in Cassady's evaluation and the comment about watching pornography. Ciara arranged a meeting with Dan Friel ("Friel"), who is the Hammond School's labor attorney, and Eliza Gonzalez ("Gonzales"), the Director of Human Resources Department at the time.

Friel and Gonzalez investigated Comer's complaints. Reprimands and other discipline resulted. Kolcznski's reprimand addressed his comments at the Christmas party, among other things. He was also removed from his position as Coordinator of

Maintenance and demoted to the position of pipe fitter with a commensurate reduction in pay. He was also directed to treat people in a professional and courteous manner and to refrain from any conduct that could be interpreted as intimidating or embarrassing. Mr. Kuc was disciplined for giving the Hitler salute and was advised that this conduct was entirely unacceptable. He was suspended without pay for 5 days and removed from his position as Laborer/Foreman and demoted to the position of Laborer with a commensurate reduction in pay. He likewise was directed to treat people professionally and courteously. Hickman was reprimanded for failing to notify human resources of Comer's complaints. Comer acknowledged that these reprimands and demotions occurred. Comer was not reprimanded in any way as a result of this investigation by Friel and Gonzalez or because of her complaints.

By February of 2013, Dr. Schweitzer had replaced Hickman. Dr. Schweitzer was contacted by a teacher at Morton High School (adjacent to the warehouse) and advised that the teacher saw Cassady driving a school van in which Comer was the passenger. Cassady stopped the van at Comer's car. Comer got out, took something from the van, and put it in her car. The next morning Dr. Schweitzer spoke with Cassady and Comer, and advised them to use caution as people may see something that they think is occurring, but it may not actually be occurring. Dr. Schweitzer

did not accuse Comer or Cassady of stealing. Comer was upset at this meeting as she believed Dr. Schweitzer had accused her of stealing. Comer agreed, however, that what Dr. Schweitzer said was that the perception of the person making the report may have been that Comer was stealing. The next day, Dr. Schweitzer issued a memo to all of the employees cautioning them to be mindful of the public's perception. This memo did not mention Comer by name or accuse her of stealing. Comer was upset because she believed the memo should have been written first and then Dr. Schweitzer should have met with herself and Cassady. Comer was not disciplined, written up or reprimanded in any way as a result of this incident.

The next incident that caused Comer concern occurred in July 2013. During the summer the maintenance department employees work four, ten-hour days and usually had Fridays off. However, on this particular Friday, Comer was asked to do some painting. As a result, she needed to go to the warehouse to pick up her equipment. Another employee, Francisco Jiminez[2] ("Jiminez"), had not been advised in advance that Comer was authorized to do work on this Friday. Each employee, including Comer, has an ID badge which allows access to the warehouse. In addition, each employee, including Comer, is given the security code to deactivate the

---

[2] In Plaintiff's Deposition, Jiminez's last name is spelled incorrectly as Emaniz.

alarm in the warehouse. When Comer arrived at the warehouse, she did not have her badge or security code, and she asked Jiminez if he would use his badge to let her in. Jiminez was not aware that Comer had been authorized to do work on that day, and he did not want her to come into the warehouse using his security code. Jiminez called Dr. Schweitzer to get authorization for Comer's entry. Dr. Schweitzer advised that she should be allowed to have access, and Jiminez cooperated. Dr. Schweitzer then returned to the warehouse about 3:00 p.m., which was the time for Comer to return, so that there would be no difficulty between Comer and Jiminez. Both Jiminez and Comer told Dr. Schweitzer their side of the story. Comer said that she was upset that Jiminez would not allow her into the warehouse. Jiminez advised that Comer was threatening to him. Comer acknowledged that she did call Jiminez "crazy". She also alleges that Jiminez got out of his van and came toward her in a menacing manner.

Ultimately Dr. Schweitzer advised Jiminez and Comer that she thought they each could have handled the situation differently. Neither Comer nor Jiminez were disciplined. After this incident, Comer had no further difficulties or any other incidents with Jiminiez. In a memo regarding the incident, Comer indicated that she had advised Dr. Schweitzer that she did not feel the incident with Jiminez was racist, but felt like it was harassment.

The next situation occurred in December 2013. Dr. Schweitzer was advised by Terry Butler ("Butler"), the School's Director of Transportation, that the School's insurance company, Hammond National Insurance Company, had done a random check of driver's licenses for those employees driving school vehicles. As a result, the insurance company learned that Comer's license had been suspended for eleven months, and she had an unpaid fine and points on her license. Butler told Comer that the School's insurance company had advised him that Comer could not drive a school vehicle for five years as a result of these problems. This was not Butler's decision. The insurance company placed a "watch" on several other employees in addition to Comer. Dr. Schweitzer spoke with Comer and suggested that she take a defensive driving course to eliminate the points on her driver's license and get her license reinstated. Comer took the course and paid the fine. Her driver's license was then reinstated. Nonetheless, Butler told Comer that the insurance company advised that Comer could not drive a school vehicle for a period of three years. Eventually the insurance company was persuaded to lift the ban on Comer's driving a school vehicle. As a result of this incident, Comer's job was not terminated or suspended, and she was not disciplined in any way.

Furthermore, from December 2013 to March 2014 (i.e, the period of time in which the insurance company advised that Comer

could not drive a school vehicle until the time of Cassady's death), Cassady was allowed to drive Comer to all of her work assignments so Comer would not lose any work. During the time between Cassady's death and the ban being lifted by the insurance company, Dr. Schweitzer assigned Comer to Morton High School. Morton High School is a short walk from the warehouse, so Comer again did not lose any work.

Comer alleged that there were other employees with suspended licenses who were allowed to drive. Dr. Schweitzer testified that this was not the case, and any time it was brought to the School's attention that an employee had a suspended driver's license, the situation had to be corrected before they could be allowed to drive a school vehicle. This happened with Cassady, and he was not allowed to drive until it was cleared up. In fact, Comer drove Cassady until this was resolved.[3]

Next Comer took issue with a comment made in February 2014. She was assigned to a painting project at Morton High School. The head custodian at Morton High School was a person by the name of Tom Smitka ("Smitka"). The assignment involved painting over graffiti in one of the men's restrooms. Comer decided to wait until school was over for the day to do the painting and to

---

[3] On February 13, 2012, Cassady's driver's license was checked for violations and found that it was suspended as of February 9, 2012. The next day Cassady purchased insurance to reinstate his license. The status of the license was checked again on February 23, 2012, and found to be valid. Additionally, the insurance company did not ban Cassady from driving.

enlist the help of a Morton High School custodian by the name of Barb.  Comer arrived at Morton High School around 2:00 p.m. and the day ended at 2:30 p.m. She walked around for a while and then took a break at about 2:15 p.m.   She and Barb were in the teacher's lounge.  According to Comer, Smitka walked past several times and finally looked in and indicated that, if she did not have work to do, he had some work for her.  Smitka was not Comer's supervisor and she did not want him telling her what to do. Comer was not disciplined or reprimanded in any way as a result of Smitka's remark.

 A grievance meeting occurred on April 3, 2014.   According to Comer, this grievance meeting was designed to address all of the incidents that had previously been discussed. Comer's union representative, Mr. Loftis, was present.

Dr. Schweitzer had been considering outsourcing the painting department for approximately two years prior to July 2014. Funding for Capital Projects was declining.[4]   Dr. Schweitzer prepared a memo outlining her budgetary concerns and the rationale for outsourcing the painting department.   Through the years, the number of employees in the various craft departments of Hammond

---

[4] Schools in Indiana are required to maintain several different funds.  The largest is the General Fund, out of which  many of the employee's salaries and benefits are paid.  The Capital Projects Fund is used primarily for making repairs on buildings, but can also be used to defray certain employee's costs, such as the painting department.

School had declined for budgetary reasons. Dr. Schweitzer concluded that it made sense to eliminate the department and utilize an independent contractor. Not only would this save money, but in this way, a painter could come in and work in the afternoon or the evening after the schools were closed.

Dr. Schweitzer made a recommendation that the painting department be eliminated to Mr. Theo Boone ("Boone"), Hammond School's Chief Financial Officer. Boone then recommended to the Superintendent, and then to the Board, that the painting department be eliminated. The Board voted to eliminate the painting department. Dr. Schweitzer believes that approximately $175,000.00 has been saved since eliminating the painting department in July 2014.

Dr. Schweitzer discussed the elimination of the painting department in the grievance meeting with Comer and Mr. Loftis on April 3, 2014. Mr. Loftis indicated that there was no problem with eliminating the painting department so long as the independent contractors were union painters. He reiterated this position in July 2014 in a meeting with Dr. Schweitzer. Neither Mr. Loftis nor Comer filed a grievance regarding the elimination of the painting department per the Collective Bargaining Agreement between Hammond School and the painters.

The painting department was eliminated for budgetary reasons and not because of Comer's job performance. Dr. Schweitzer denies that the painting department was eliminated as a result of the charges of discrimination or other complaints made by Comer.

On or about March 22, 2011, Comer filed her first EEOC Charge, 24B-2011-00040. Therein, she alleged discrimination based upon her sex and race. Her claims were based on several incidents discussed above. The EEOC issued its determination and right to sue letter in Charge No. 24B-2011-00040 on June 30, 2011.

The next EEOC Charge that Comer filed was number 24B-2013-00016 on February 5, 2013. Comer alleged retaliation by Dr. Schweitzer. Specifically, Comer alleged Dr. Schweitzer "harassed me on a continuous basis, with the most recent on January 11, 2013 in which she alleges that I was stealing." This is the incident detailed above in which Dr. Schweitzer spoke with Comer and Cassady regarding the perceptions of someone who reported to Dr. Schweitzer, and Comer "perceived" this as Dr. Schweitzer's accusing her of stealing. On February 26, 2013, the EEOC issued its notice of right to sue letter. Comer did not file any lawsuit regarding Charge Numbers 24B-2013-00016 or 24B-2011-00040 within ninety (90) days of the issuance of the right to sue letters by the EEOC.

The next EEOC Charge filed by Comer was number 470-2014-01277 on March 29, 2014. In this charge Comer alleged discrimination based upon race, sex and retaliation. Specifically, Comer alluded to her two previous charges (although the charge numbers referenced by Comer are not accurate). Comer then discussed the issue in July 2013 involving Jiminez and her desire to enter the warehouse, which is detailed above. Comer addressed the issue about points on her driver's license and not being allowed to drive the school vehicles. Comer acknowledged in her charge that she was still not allowed to drive school vehicles and had been informed that this is due to insurance coverage. Comer also alleged that she thought other white males had been allowed to drive school vehicles on suspended licenses. Comer went on in this charge to complain about the comment made by the custodian, Smitka, at Morton High School, suggesting that if she did not have anything to do, he could give her some work.

The last EEOC charge that Comer filed was number 470-2014-02282 on July 10, 2014. This charge was based only on retaliation and referenced the fact that the painting department was closed and Comer's job terminated. The EEOC's notice of right to sue was issued for charge numbers 470-2014-01277 and 470-2014-02282 on September 30, 2014.

Comer's Claims of Sex and Race Discrimination

While not explicitly conceding that her sex and race discrimination claims fail, Comer appears to be making such a concession implicitly. Her response brief indicates that there are "genuine issues of material fact that precludes the granting of Defendants [sic] Motion for Summary Judgment *on the issue of retaliation*." (DE # 43-1 at 2)(emphasis added). Comer's argument then focus' exclusively on why the retaliation claim should not be dismissed.

The only sex and race discrimination claims that remain pending stem from EEOC charge number 470-2014-01277. Title VII prohibits employers from firing or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. *See* 42 U.S.C. §§ 2000e-2(a)(1). To prevail, Comer must demonstrate a causal link between her gender or race and the alleged adverse employment actions.

The legal standard to be applied "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, other proscribed factor caused the discharge or other adverse employment action." Evidence must be considered as a whole." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). "Evidence must be considered as a whole, rather than asking whether any particular

piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.*

There are no facts before this Court that would allow a reasonable jury to find in Comer's favor on any claim of race of sex discrimination raised in EEOC charge number 470-2014-01277. As an initial matter, none of the incidents raised by Jiminez resulted in any adverse job action. Comer received no discipline for the situation with Jiminez. Even when she was unable to drive a school vehicle she suffered no adverse job action. Instead, the school made sure she remained able to work, either by getting rides with Cassady or by being assigned to the school right next to the warehouse. Likewise, the comment by Smitka regarding Comer's work ethic resulted in no adverse job action.

Furthermore, Comer has produced no evidence whatsoever that any of these situations were in any way connected to her race or gender. Because Hammond School sets forth a detailed and well-supported argument in favor of dismissal and Comer has produced no evidence or argument in response, summary judgment will be granted as to Comer's remaining sex and race discrimination claims.

Comer's Claims of Retaliation

For Comer's retaliation claims to survive summary judgment, she must offer evidence that she engaged in statutorily protected

activity, suffered a materially adverse employment action, and that a causal connection exists between the protected activity and the adverse employment action. *See Baines v. Walgreen Co.*, 863 F.3d 656, 661. To show a causal connection, Comer must produce some evidence that the defendant "would not have taken the adverse … action but for Comer's protected activity." *Id.* Comer, relying upon *Coleman v. Donahoe*, argues that a lower standard of proof is applicable. *Coleman v. Donahoe*, 667 F.3d 853 (7th Cir. 2012)("Coleman can show causation by showing that her complaints and EEO filings were a 'substantial or motivating factor' in the Postal Service's decision to place her in off-duty status and/or to fire her."). Following the decision in *Coleman*, the United States Supreme Court decided *University of Texas S.W. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2528 (2013). *Nassar* clarifies that, to succeed on a retaliation claim, a plaintiff must show "but for" cause. *Id.* ("The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."); *see also Jones v. Lake County Sheriff's Department*, No. 2:11-CV-356-TLS, 2014 WL 3928405 (N.D. Ind. Aug. 11, 2014).

Comer's claims of retaliation stemming from EEOC charge 740-2014-01277 fail for the same reasons her discrimination claims raised in this charge fail: she sets forth no adverse job actions.

To the extent it is possible to view the prohibition against driving school vehicles as an adverse job action[5], the evidence before this Court is that Hammond School did not make that decision – the insurance company told Hammond School that Comer could not drive school vehicles.  Furthermore, Comer fails to provide evidence from which a reasonable jury could find any link between the situations she describes in EEOC charge 740-2014-01277 and her filing of previous EEOC charges.

Charge 470-2014-02282 also raises a claim of retaliation. Here, Comer argues that her termination was the result of retaliation for filing previous EEOC charges.  In response to the instant motion, Comer admitted the truth of Defendant's undisputed facts.  Accordingly, Comer conceded that the painting department was eliminated for budgetary reasons and not because Comer filed EEOC charges or made other complaints.  (DE #40-1 at 13, citing Schweitzer Deposition at 42-43).  Given this concession, Comer's claim that her termination was the result of retaliation must fail.

Ignoring her concession that her position was eliminated solely for budgetary reasons, Comer argues that this reason is pretextual because, unlike others that are no longer employed in the trades, she was not allowed to work until the job could be

---

[5] Comer lost no pay as a result of her inability to drive and she was not demoted.  Furthermore, she has offered no argument to the Court explaining why she believes this should be treated as an adverse job action.

eliminated through normal attrition. In support of her argument that she was treated differently than other similarly situated employees, she relies upon a chart outlining staffing changes in the various trades over a ten year period. She notes the following:

> In this 10 year period she was the only position eliminated (laid off). Secondly as a general rule [a]ll the employees who were not replaced either resign, retired, or died (there were only 2 who were terminated). Their positions were eliminated through normal attrition. The Plaintiff was not given the opportunity to retire or resign or the benefit to retain her job until such time as she wanted to resign or retire. The normal attrition policy never applied to the Defendant [sic]. Considering the fact that she was the only female in the Department, the only African American in the Department, and most importantly, she was the only one to file charges of discrimination.

This is not enough. Even without her concession that the decision was made for budgetary reasons and not based on her filing of EEOC charges or other complaints, this would not suffice. Comer has produced no evidence from which a jury could find that the filing of Comer's EEOC charges was linked to the decision to eliminate her position, much less a but-for cause.

CONCLUSION

For the reasons set forth above, Defendant's summary judgment motion, filed on November 2, 2016, is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.**

**DATED: September 11, 2017**          /s/RUDY LOZANO, Judge
                                        **United States District Court**